WESTERN UNION TELEGRAPH COMPANY v. E. G. OLIVARRI.

No. 2148. Decided March 29, 1911.

**1.—Telegraph—Damages—Action.**

One who is neither the sender nor addressee of a telegraph message may have a right of action for negligence failure to deliver it where the terms of the message convey notice to the company that it was sent for his benefit. (P. 205.)

**2.—Telegraph—Damages—Notice.**

One undertaking the transmission of a telegram must take notice of the relations existing between persons whose names appear therein, it being his duty, if not fully informed, to make inquiry. (P. 205.)

**3.—Same—Case Stated.**

A telegraph company which negligently failed to deliver the message, in the Spanish language, from F. Olivarri to E. G. Olivarri, "They were twin boys. Lita doing nicely. They probably will not live," the addressee and "Lita" being husband and wife, was liable for damages to wife, mother of the infants, for the disappointment and distress consequent upon the absence of the husband and his aid and comfort during the death and burial of the babes. The imputed knowledge of the relations of the parents was notice that the purpose of the message was to secure the husband's presence. (Pp. 204-206.)

**4.—Cases Distinguished.**

Western Union Tel. Co. v. Luck, 91 Texas, 178, and Western Union Tel. Co. v. Wilson, 97 Texas, 22, distinguished from the present case. (P. 206.)

Error to the Court of Civil Appeals, Fourth District, in an appeal from Bexar County.

Olivarri sued the telegraph company and recovered. Defendant appealed, and on affirmance obtained writ of error.

*Geo. H. Fearons* and *Webb & Goeth*, for plaintiff in error.—The telegraph company can not be held liable for damages unless at the time the contract for the transmission of the message is made it has notice or can reasonably foresee that such damages will be sustained; and messages couched in language which the agents of the company do not understand will not give notice that the parties beneficially interested will sustain damages in the nature of mental or physical pain by reason of the failure to deliver such message. Western U. Tel. Co. v. Mellor & Barnes, 33 Texas Civ. App., 264; Railway Co. v. Davidson, 39 S. W., 605, 15 Texas Civ. App., 334; Ferguson v. Am. Telegraph Co., 35 L. R. A. (Pa.), 554-556; Daniel v. Western U. Tel. Co., 61 Texas, 452; Western U. Tel. Co. v. Wilson (Fla.),

22 L. R. A., 434 (many cases cited); Western U. Tel. Co. v. True, 101 Texas, 236; Thompson on Elec. Law, 358, 359, 360; Western U. Tel. Co. v. Coggin, 68 Fed., 137; Croswell on Elec. Law, 601, 602, 603; Sartor v. Bolinger, 59 Texas, 413; Western U. Tel. Co. v. Twaddell, 103 S. W., 1120, 47 Texas Civ. App., 51; Primrose v. Telegraph Co., 154 U. S., 33.

The plaintiff can only recover such damages as were reasonably within the contemplation of the parties at the time the contract was made and in order to recover special damages the company must reasonably have had notice of such damages at the time the contract was made. Western U. Tel. Co. v. Wilson, 97 Texas, 25; Western U. Tel. Co. v. Linn, 87 Texas, 7; Western U. Tel. Co. v. Luck, 91 Texas, 178; Western U. Tel. Co. v. Butler, 45 Texas Civ. App., 55; Western U. Tel. Co. v. McFadden, 75 S. W., 352, 32 Texas Civ. App., 582; Western U. Tel. Co. v. Gaddis, 77 S. W., 37, 33 Texas Civ. App., 391; Western U. Tel. Co. v. Bell, 90 S. W., 714.

J. D. Childs and James W. Brown, for defendant in error.—That the translation shows a message concerning the serious illness of the parties interested and on its face giving the telegraph company full notice of its importance to those mentioned in the message, can not be doubted. Western U. Tel. Co. v. Simmons, 93 S. W., 1084; Western U. Tel. Co. v. Landry, 108 S. W., 461; Western U. Tel. Co. v. Rosentrater, 80 Texas, 407; Western U. Tel. Co. v. Lovett, 24 Texas Civ. App., 84; Telegraph Co. v. Moore, 76 Texas, 66; Telegraph Co. v. Adams, 75 Texas, 531; Telegraph Co. v. Feagles, 75 Texas, 537; Telegraph Co. v. Carter, 85 Texas, 580; Potts v. Telegraph Co., 82 Texas, 545.

We also think the above cases sufficiently answer appellant's contention, that the agent receiving the telegram must understand its meaning or otherwise the defendant company would not be liable for its negligence in handling the message.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

We have concluded that the Court of Civil Appeals, whose two opinions will be found in 110 S. W., 930, and 126 S. W., 688, correctly decided the questions now presented to this court and that the judgment should be affirmed. Our discussion will be confined to the one question on which we granted the writ of error.

The action was by Olivarri to recover damages for suffering which resulted to his wife, Lita, from the failure of defendant to deliver to him a telegraphic message which was in the Spanish language, and, as translated, is as follows:

"San Antonio, 3/25, 1907.

"To E. G. Olivarri,

"Matamoras, Tamaulipas.

"They were twin boys. Lita doing nicely. They probably will not live.                                     (Signed)        F. Olivarri."

The message was sent at Mrs. Olivarri's request, and was intended

to inform her husband, who was traveling in Mexico, of her sickness and of the births and probable deaths of the babies, in order that he might return and give to her the consolation and comfort of his presence, aid and attention to the necessities of the situation. The message was never delivered, the babies died. and were buried in his absence, and the consequent disappointment and distress of the wife and mother constituted the basis of the judgment under review.

The question which impressed us as open to debate was whether or not the message was sufficient to notify the defendant that "Lita" was a beneficiary of it; that its purpose was to summon her husband, and of the damage which she might suffer if, through failure to get the message promptly, he did not come. We have concluded that the decisions require an affirmative answer and justly so.

Most often the action has been by either the sender or the addressee of the message, and usually their relation to it and the duty assumed by the company to them most readily suggests that it is for the benefit of one or both of them; but there is no fundamental reason why another may not also be a beneficiary, entitled to the performance of the duty resting on the company, and to redress for a violation of that duty, provided there be enough to notify the company of his interest and of the damage he will likely suffer if the duty be not performed.

In the case of Western Union Telegraph Co. v. Cooper, 71 Texas, 507, the beneficiary, for whose suffering damages were allowed, was neither the sender nor addressee of the telegram, her name merely appearing in it as the sick person for whom the services of the doctor summoned were needed; and in other cases the names of several appeared in the message or were made known to the agents receiving it as persons who might be damaged by neglect of duty. The rule on the subject, firmly established by the decisions, is that the company's servants must take notice of relations existing between persons whose names appear, it being their duty, if not fully informed, to make inquiry. From this doctrine the easy deduction is that there is enough in such use of names to suggest that any one of those mentioned may be one of the persons most vitally concerned in the conveying of the intelligence, and the beneficiary for whom the sender acts, where nothing to the contrary appears. But, although there be a right of action arising to such a person from failure of duty on the part of the company, damages claimed as a result thereof may be of a character in no way foreseeable as a proximate result thereof, and of such there can be, of course, no recovery. In the Cooper case the message plainly indicated that the addressee of the message was summoned because of the sickness of "Josephine" and for her benefit. In the present case there is no express summons at all, and the question is, was there enough to indicate that the purpose of the telegram was to induce, and that it would probably result in, the husband's return. Notice of the relation of husband and wife between "Lita" and the addressee of the message being chargeable to the company under the decisions, what did the language used naturally suggest? We think the answer to that question solves the one on which this case depends. Anyone reading it would understand

that "Lita" had borne twins; that she was doing well, but they were likely to die. No one ought to doubt, we think, that with normal relations existing between husband and wife, such as must be presumed, she would want him at home and he would want to return home in such a crisis, and that nothing more than the simple information thus given alike to him and to the company was necessary to call him back. It is not too much to require. that the company. should foresee that the natural and probable effect of intelligence of such facts upon a husband's action would be as potent and as decisive as an express summons; and this brings the case within the decisions.

The relations existing and the character of the intelligence conveyed distinguish this case from Western Union Tel. Co. v. Luck, 91 Texas, 178, and Western Union Tel. Co. v. Wilson, 97 Texas, 22, relied on by counsel for plaintiff in error.

*Affirmed.*